**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| BRITTNEY BRETT BOND, and B. BRETT BLEVINS, as TRUSTEES OF THE B. BRETT BLEVINS LIVING TRUST DATED DECEMBER 22, 2010; and EVERSOLE LAW FIRM, P.C., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.   9:26-cv-628-RMG |
| vs. | ) ) | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; and JOHN DOE 4, | ) ) ) | |
| Defendants. | ) ) | |

Plaintiffs BRITTNEY BRETT BOND, and B. BRETT BLEVINS, as TRUSTEES OF THE

B. BRETT BLEVINS LIVING TRUST DATED DECEMBER 22, 2010 ("Blevins Trust"); and

EVERSOLE LAW FIRM, P.C. ("Eversole Firm"), by and through their undersigned counsel,

hereby submit this Complaint, showing the Court as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.

The B. Brett Blevins Living Trust Dated December 22, 2010, is a living trust established

under the laws of the State of Florida. Its Trustees are residents and citizens of the State of Florida

and Georgia.

2.

Plaintiff the Eversole Law Firm, P.C., is a law firm organized and doing business in the

State of South Carolina, with its principal place of business located in Beaufort, South Carolina.

1

3.

Upon information and belief, Defendant John Doe 1 is a citizen of a State other than South Carolina who has committed tortious acts within the State of South Carolina or, alternatively, that targeted business activities and businesses in South Carolina, has transacted business within the State of South Carolina, and has committed acts that have caused injury within the State of South Carolina.

4.

Upon information and belief, Defendant John Doe 2 is a citizen of another State other than South Carolina who has committed tortious acts within the State of South Carolina or, alternatively, that targeted business activities and businesses in South Carolina, has transacted business within the State of South Carolina, and has committed acts that have caused injury within the State of South Carolina.

5.

Upon information and belief, Defendant John Doe 3 is a citizen of another State other than South Carolina who has committed tortious acts within the State of South Carolina or, alternatively, that targeted business activities and businesses in South Carolina, has transacted business within the State of South Carolina, and has committed acts that have caused injury within the State of South Carolina.

6.

Upon information and belief, Defendant John Doe 4 is a citizen of another State other than South Carolina who has committed tortious acts within the State of South Carolina or, alternatively, that targeted business activities and businesses in South Carolina, has transacted

business within the State of South Carolina, and has committed acts that have caused injury within the State of South Carolina.

7.

Defendant John Doe 1 is the named owner of a bank account at TD Bank, account number xxxxxx4882 (the "TD Bank 4882 Account"). Upon information and belief, John Doe 1 is a shell corporation or company established under the laws of a State other than South Carolina for the purpose of stealing and laundering funds.

8.

Defendant John Doe 2 is the beneficial owner of the TD Bank 4882 Account.

9.

John Doe 3 is the owner of one or more accounts to which funds from the wire fraud alleged herein were subsequently transferred by participants and conspirators in the fraud alleged herein.

10.

John Doe 4 is a person who directed the activities of the criminal enterprise alleged herein, including the wire fraud at issue in this case.

11.

Jurisdiction and venue are proper in South Carolina federal and state courts pursuant to the South Carolina Long-Arm Statute, S.C. Code Ann. § 36-2-803, as Defendants purposely directed activities with the forum or a resident thereof; performed acts whereby they purposely availed themselves of the privilege of conducting activities in South Carolina; the claims asserted herein arise out of and relate to Defendants' forum-related activities; and the exercise of jurisdiction comports with fair play and substantial justice.

12.

Jurisdiction is also proper because Defendants committed intentional acts, purposely aimed by Defendants at a South Carolina business with a banking relationship in South Carolina, causing harm that the Defendants knew or should have known was likely to be suffered in South Carolina. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); Calder v. Jones*, 465 U.S. 783, 788 (1984). Defendants knowingly reached out to a party to a Closing and a South Carolina law firm regarding a South Carolina real estate transaction for the purpose of diverting funds to accounts unrelated to the law firm or the transaction.

13.

A substantial part of the events underlying Plaintiffs' claims took place in this District, in that the perpetrators of the fraud alleged herein targeted employees of Plaintiff Eversole Law Firm, P.C., located in Beaufort, South Carolina, by providing false wire instructions to divert funds to Defendants and their co-conspirators. South Carolina has a substantial interest in providing a forum, rendering jurisdiction and venue in this Court proper.

14.

The exercise of jurisdiction by this Court over Defendants and banks and other persons and entities acting in concert with Defendants would not violate fairness and substantial justice.

15.

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 (federal question as to the RICO claims) or, alternatively, § 1332 (diversity of citizenship, as the amount in controversy exceeds $75,000 and, upon information and belief, the Defendants are citizens of states other than South Carolina).

16.

Venue is proper in the courts located in and covering South Carolina and in this Division, pursuant to 28 U.S.C. § 1391(b)(2), as the events giving rise to the claim occurred in Beaufort, located within the District of South Carolina.

FACTUAL BACKGROUND

17.

At all times relevant to this Complaint, Plaintiff Eversole Law Firm, P.C., has operated a law firm in Beaufort, South Carolina, handling and closing real estate transactions.

18.

At all times relevant to this Complaint, the Eversole Firm maintained an Interest on Lawyers' Trust Account ("IOLTA account") at First Citizens Bank.

19.

At all times relevant to this Complaint, the Blevins Trust maintained a bank account at Valley National Bank.

20.

In October and November 2025, the Eversole Firm was assisting the Blevins Trust in closing a transaction for the purchase of real estate located at 375 Fripp Point Road, in St. Helena Island, South Carolina (the "Property"). The transaction was set for a closing (the "Closing") on November 5, 2025.

21.

In October 2025, Defendants and their co-conspirators, hacked into communications among the parties to the Closing, posed as parties to the Closing and employees of the Eversole Firm, and delivered to Plaintiff the Blevins Trust false wire instructions ("Fraudulent Wire

Instructions") directing that Blevins Trust wire a payment to the TD Bank 4882 Account and misrepresenting to the Blevins Trust that the TD Bank 4882 Account was an IOLTA account that belonged to the Eversole Firm.

22.

In reliance on the Fraudulent Wire Instructions, on October 31, 2025, Plaintiff the Blevins Trust wired from its Valley National account the sum of $1,236,835.04 to the TD Bank 4882 Account (the "Wire Transfer"), incorrectly believing that the TD Bank 4882 Account was the IOLTA account belonging to the Eversole Firm.

23.

The TD Bank 4882 Account is owned by John Doe 1. Upon information and belief, John Doe 1 is not a party to and does not have a legitimate business interest in the Closing.

24.

The owners of the TD Bank 4882 Account and subsequent accounts to which the Wire Transfer may have been transferred (the "Recipient Accounts") are unknown, but upon information and belief, they are persons operating or recruited by a fraudulent enterprise for the purpose of moving and laundering the funds beyond the reach of Plaintiffs and Court process.

25.

Upon information and belief, the Defendants may be using one or more shell corporations, other accounts, and digital currency for the purpose of diverting and laundering Plaintiffs' funds.

26.

Because of the fraudulent wire instructions supplied by Defendants or their co-conspirators, the Wire Transfer was transferred into the TD Bank 4882 Account and the Recipient Accounts, to persons not affiliated with Plaintiff or the Closing.

27.

Defendants are individuals or businesses whose names are unknown, but who own the Recipient Accounts that received the Wire Transfer and proceeds thereof, directed the fraudulent scheme alleged herein, and who either acted with knowledge of the fraudulent nature of the fraud upon the parties to the Closing or with reckless indifference to the improper things they were doing or being asked to do as instrumentalities of the fraudulent scheme.

28.

Upon information and belief, Defendants' co-conspirators are individuals or businesses whose names are unknown, but who directed the fraudulent scheme alleged herein, including but not limited to: (1) directing that Defendants set up the Recipient Accounts and receive the Wire Transfer for fraudulent purposes; (2) planning and engaging in the fraud that preceded the Wire Transfer; and (3) receiving, negotiating, or disposing of the funds from the Wire Transfer.

29.

Submitted as Exhibits 1 and 2 with Plaintiff's Motion for Ex Parte Temporary Restraining Order and for Preliminary Injunction are the declarations of Plaintiffs. As set forth therein:

a. The fraudulent actors sent character substitution emails that substituted characters in email address domains in a deceptive manner to avoid detection to both the Eversole Firm and the Blevins Trust.

b. The fraudulent emails sent to the Blevins Trust included emails from a person posing as an employee of the Eversole Firm, and they fraudulently directed the Blevins Trust to wire funds to the TD Bank 4882 Account.

c. In reliance on the Fraudulent Wire Instructions, the Blevins Trust wired the sum of $1,236,835.04 to the TD Bank 4882 Account.

d.  The fraudulent emails sent to the Eversole Firm included emails from a person posing as Brittney Bond, one of the co-Trustees of the Blevins Trust, and a person posing as the bank holding the Eversole Firm's IOLTA trust account purporting to confirm that the wired funds were received in the Eversole Firm's IOLTA account (the "Fraudulent Wire Confirmation").

e.  In reliance on the Fraudulent Wire Confirmation, the Eversole Firm closed the transaction and disbursed to various parties connected to the Closing, putting their other clients' funds in the IOLTA account at risk.

30.

Plaintiffs seek the aid of the Court and the Court's laws and rules to discover the identity of the persons or businesses who own the TD Bank 4882 Account and who engaged in the fraudulent email wire instructions and assertion of dominion over funds from the Wire Transfer.

31.

Upon information and belief, Defendants and their co-conspirators accessed, used, transferred, converted, withdrew, and stole the funds that Plaintiff the Blevins Trust transferred to the TD Bank 4882 Account.

<u>FIRST CLAIM FOR RELIEF – CIVIL RICO</u>

32.

Plaintiffs hereby incorporate the preceding paragraphs of this Complaint by reference.

33.

Plaintiffs bring claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") pursuant to the provisions of 18 U.S.C. § 1961, *et seq.*

34.

Defendants and their co-conspirators engaged in conduct of an enterprise through a pattern of racketeering activity that involved interstate mail fraud, interstate wire fraud, and money laundering, including but not limited to violations of 18 U.S.C. §§ 1956(a)(2)(A) (money laundering), wire fraud (18 U.S.C. § 1343), mail fraud (18 U.S.C. § 1341), including but not limited to the use of fraudulent emails, the Wire Transfer, other money-laundering methods to divert and hide fraudulently obtained funds, withdrawals of cash, the use of the mails to mail cashier's checks to other participants in the scheme alleged herein, the use of Bitcoin and other digital assets to abscond with Plaintiffs' funds, laundering of funds to other accounts and overseas, and conducting financial transactions with proceeds of unlawful activity. Upon information and belief, Defendants and their co-conspirators knew that the funds were proceeds of unlawful activities at the time they transferred and converted the funds.

35.

Plaintiffs have suffered damages in excess of $1,236,835.04, which damages were proximately caused by Defendants' RICO violations and Plaintiffs are entitled to treble damages and attorneys' fees under 18 U.S.C. § 1964(c), for which Defendants should be liable to Plaintiffs.

36.

The transactions by Defendants alleged herein were part of a pattern of racketeering activity, including but not limited to transfers of other stolen funds received by, contained in, and transferred from the Recipient Accounts and other accounts used in the scheme, along with funds from other, similar fraudulent schemes targeting other persons and entities in South Carolina and other States, territories, and countries.

37.

Upon information and belief, Defendants' transactions alleged herein were not isolated in light of the complex nature of the scheme to hack email accounts, intercept communications, pose as various actors affiliated with the Closing, and fraudulently direct and divert funds to the Recipient Accounts.

38.

Defendants and their co-conspirators engaged in secrecy, disguising and hiding their true identities from Plaintiffs, directing funds be wired from Plaintiffs' account to the TD Bank 4882 Account using false identities. This secrecy and subterfuge demonstrate intentional conduct by Defendants. *See, e.g., Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1402 (11th Cir. 1994).

39.

Defendants and their co-conspirators went to great lengths to hide their scheme from Plaintiffs, including hiding their identities, supplying false wire instructions, and soliciting participants to accomplish the ends of the scheme.

40.

Plaintiffs have suffered damages in excess of $1,236,835.04, which damages were proximately caused by Defendants' RICO violations, and Plaintiffs are entitled to treble damages and attorneys' fees under 18 U.S.C. § 1964(c), for which Defendants are liable to Plaintiffs.

<u>SECOND CLAIM FOR RELIEF – MONEY HAD AND RECEIVED</u>

41.

Plaintiffs hereby incorporate the preceding paragraphs of this Complaint by reference.

42.

Defendants and their co-conspirators directed and diverted funds from the Blevins Trust's account to be transferred into the TD Bank 4882 Account and the Recipient Accounts for the benefit of Defendants and their co-conspirators. These funds constitute money which Defendants are not entitled in good conscience to retain and which in equity and good conscience, they should return and pay to Plaintiffs.

43.

Defendants have the obligation in equity and good conscience to repay the funds that were transferred by the Wire Transfer to the Recipient Accounts, which funds were wired into said account as the result of fraud.

44.

Defendants have caused damage to Plaintiffs by transmitting the Fraudulent Wire Instructions directing the Wire Transfer, by submitting the Fraudulent Wire Confirmation, and fraudulently taking funds from Plaintiff's account, for which they should be liable in damages and for injunctive relief ordering that they and all persons acting in concert with them cease all transfers or negotiation of the funds and return the funds to Plaintiffs.

THIRD CLAIM FOR RELIEF – FRAUD

45.

Plaintiffs hereby incorporate the preceding paragraphs of this Complaint by reference.

46.

Defendants and their co-conspirators obtained funds from Plaintiff the Blevins Trust's account through a fraudulent scheme as alleged above. Defendants and their co-conspirators either committed these acts themselves or acted through agents over whom they controlled the time,

manner, method and means of committing the fraud, or with a co-conspirator, for the purpose of transferring the funds into the TD Bank 4882 Account and subsequent Recipient Accounts.

47.

Defendants knew they did not own the funds from the Closing, and they and their co-conspirators provided fraudulent documents for the purpose of fraudulently obtaining the funds from Plaintiffs' account.

48.

Defendants intended that Plaintiffs rely on their misrepresentations as to their identity and the affiliation of the TD Bank 4882 Account and the Fraudulent Wire Instructions with the Closing.

49.

Plaintiffs foreseeably relied on the Fraudulent Wire Instructions, the Fraudulent Wire Confirmation, and the aforesaid misrepresentations by Defendants.

50.

The actions of Defendants constitute fraud for which Plaintiffs are entitled to recover damages from Defendants.

51.

Defendants committed fraud, for which they should be liable in damages and for injunctive relief ordering that they and all persons acting in concert with them cease all transfers or negotiation of the funds and return the funds to Plaintiffs.

<u>FOURTH CLAIM FOR RELIEF – CIVIL CONSPIRACY</u>

52.

Plaintiffs hereby incorporate the preceding paragraphs of this Complaint by reference.

53.

Upon information and belief, Defendants conspired and agreed with each other and with one or more other persons and entities to commit the fraudulent acts set forth herein.

54.

As set forth above, Defendants and their co-conspirators acted pursuant to a common intent and design with other individuals and/or entities to fraudulently move, through a series of transactions, funds from Plaintiff the Blevins Trust's account to the Recipient Accounts.

55.

Plaintiffs were damaged by the aforesaid conspiracy, for which Defendants are liable in damages.

<u>FIFTH CLAIM FOR RELIEF</u>

<u>UNJUST ENRICHMENT/CONSTRUCTIVE TRUST</u>

56.

Plaintiffs hereby incorporate the preceding paragraph of this Complaint by reference.

57.

As set forth above, Defendants fraudulently obtained funds rightfully belonging to Plaintiff the Blevins Trust through a series of acts that ultimately caused Valley National to wire $1,236,835.04 from Plaintiff's account to the TD Bank 4882 Account and, subsequently, to other Recipient Accounts.

58.

Defendants and their co-conspirators should not be allowed to enjoy the beneficial interest or ownership of the funds fraudulently transferred without violating established principles of equity.

59.

A constructive trust should be imposed on all funds traceable to the Wire Transfer to prevent unjust enrichment of Defendants and their co-conspirators.

SIXTH CLAIM FOR RELIEF – INJUNCTIVE RELIEF

60.

Plaintiffs hereby incorporate the preceding paragraphs of this Complaint by reference.

61.

There is a substantial likelihood that Plaintiffs will prevail on the merits of its claims. If this injunction is not granted, Plaintiffs stand to suffer irreparable injury, loss and damage if Defendants or their co-conspirators further negotiate funds from the TD Bank 4882 Account or subsequent Recipient Accounts or use proceeds from the stolen funds in or from these accounts. In light of the fraudulent activity which resulted in money entering into the recipient accounts, including but not limited to the Recipient Accounts, Defendants are likely to dispose of Plaintiff the Blevins Trust's property and funds if the relief requested herein is not granted. The threatened injury to Plaintiffs outweighs the threatened harm the injunction may do to Defendants. Granting an injunction will not disserve the public interest in that there is no public interest in recipients of fraudulent transfers retaining such funds.

62.

An injunction, including but not limited to an asset freeze and a freeze on the TD Bank 4882 Account, subsequent Recipient Accounts, and all other accounts of Defendants and accounts containing funds traceable to the Wire Transfer, is warranted and should be issued on a temporary and permanent basis pursuant to Federal Rule of Civil Procedure 65. The injunction should restrain Defendants, all persons acting in concert with or in participation with any of them, their officers,

14

directors, beneficial owners, signatories, agents, representatives, successors, assigns, any banks, savings and loan associations, credit card companies, credit card processing agencies, merchant acquiring banks, financial institutions, or other companies that engage in the processing or transferring of money and/or real or personal property, who receive actual notice of the Court's Order by personal service or otherwise from, without prior approval of the Court, transferring, disposing of, or secreting any money or proceeds of money from Defendants and their co-conspirators and any other assets of Defendants and their co-conspirators from accounts associated with or utilized by any of the Defendants and their co-conspirators, or otherwise paying or transferring any money, stocks, bonds, real or personal property, or other assets to any of the Defendants, into or out of any accounts associated with or utilized by any of the Defendants, regardless of whether such accounts are located in the United States or abroad, including but not limited to the Recipient Accounts. This Order should include but not be limited to any and all accounts and assets utilized or owned by Defendants.

<u>SEVENTH CLAIM FOR RELIEF – PUNITIVE DAMAGES</u>

63.

Plaintiffs hereby incorporate the preceding paragraphs of this Complaint by reference.

64.

Upon information and belief, Defendants engaged in willful and wanton or, alternatively, reckless conduct. Accordingly, Plaintiffs are entitled to recover punitive damages from Defendants pursuant to S.C. Ann. § 15-32-520.

WHEREFORE, Plaintiffs pray for the following relief:

1) That process issue in accordance with the law;

2) That Plaintiffs have a judgment for injunctive relief and disgorgement of funds wrongfully taken, received, and misappropriated by Defendants, including but not limited imposing an asset freeze on assets of Defendants, Defendants' accounts, the accounts of all beneficial owners of the Recipient Accounts and signatories on the Recipient Accounts, including but not limited to the Recipient Accounts, and all other accounts which received the fraudulently transferred funds set forth herein;

3) That Plaintiffs be awarded compensatory, nominal, treble, general, and punitive damages against Defendants;

4) That Plaintiffs be awarded all costs of this action and attorneys' fees against Defendants; and

5) That Plaintiffs be awarded such other and further relief as the Court deems just and proper.

This, the 12th day of February, 2026.

Respectfully submitted,

*s/ Jonathan D. Klett*
Jonathan D. Klett, Fed. ID No. 12858
**HAYNSWORTH SINKLER BOYD, P.A.**
ONE North Main Street, 2nd Floor (29601)
P.O. Box 2048
Greenville, SC 29602
(864) 240-3257
(864) 240-3300 (facsimile)
jklett@hsblawfirm.com

Mark D. Lefkow
Georgia Bar No. 004289
*(Pro Hac Vice Motion pending)*
191 Peachtree Street, NE
Ste. 3600

16

Atlanta, GA 30303
Phone: (404) 522-8220
Fax: (404) 523-2345
Email: mlefkow@csvl.law

*Counsel for Plaintiff Eversole Law Firm, P.C.*


*s/ Joseph B. Berry*
Joseph B. Berry (D.S.C. Bar No. 12883)
LEWIS BABCOCK L.L.P.
1513 Hampton Street (29201)
Post Office Box 11208
Columbia, South Carolina 29211
(803) 771-8000
jbb@lewisbabcock.com

*Counsel for Plaintiffs Brittney Brett Bond, and B. Brett*
*Blevins, as Trustees of the B. Brett Blevins Living Trust*
*Dated December 22, 2010*